# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM GIACOMAZZI, | Case No.  1:23-cv-00939-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND TO CLOSE THIS ACTION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF Nos. 16, 20) |

## I.

## INTRODUCTION

Adam Giacomazzi ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing the ALJ improperly rejected medical opinions.

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 5, 11, 12.)

**II.**

**BACKGROUND**

**A.     Procedural History**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 1, 2018, and an application for supplemental security income on October 1, 2017.  (AR 105, 106.)  Plaintiff's applications were initially denied on June 14, 2018, and denied upon reconsideration on September 27, 2018.  (AR 144-49, 167-71.)  Plaintiff requested and received a hearing before Administrative Law Judge Jennifer Millington ("the ALJ").  Plaintiff appeared for a telephonic hearing on April 14, 2020, which was rescheduled because Plaintiff was uncooperative.  (AR 61-78.)  Plaintiff appeared for a telephonic hearing on August 13, 2020.  (AR 40-60.)  On September 18, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 18-33.)  On May 4, 2021, the Appeals Council denied Plaintiff's request for review.  (AR 1-4.)

On February 28, 2021, Plaintiff filed an action challenging the final decision of the Commissioner in the Eastern District of California.  (AR 1010.)  On February 28, 2022, at the stipulation of the parties, the action was remanded for further proceedings pursuant to Sentence Four of 42, U.S.C. § 405(g) and judgment was entered in favor of Plaintiff on March 1, 2022.  (AR 1012, 1013-14.)  On August 18, 2022, the Appeals Council remanded the matter back to the ALJ for further consideration of the medical source opinions.  (AR 1118-119.)  On March 6, 2023, Plaintiff appeared for a telephonic hearing.  (AR 925-76.)  On April 5, 2023, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 898-914.)  On April 24, 2023, the Appeals Council denied Plaintiff's request for review.  (AR 889-91.)

**B.     The ALJ's Findings of Fact and Conclusions of Law**

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, April 5, 2023:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022.

- Plaintiff has not engaged in substantial gainful activity since October 16, 2017, the alleged

2

onset date.

- Plaintiff has the following severe impairments: left shoulder dysfunction, osteoarthritis of the left wrist, type II diabetes mellitus, schizoaffective disorder (bipolar type), delusional disorder, psychoactive substance-induced mood disorder, and substance abuse.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c) except he can occasionally reach overhead with the dominant left upper extremity. He can frequently handle and finger with the left upper extremity. He is limited to understanding, remembering, and concentrating to carry out simple, routine tasks. He cannot have any work interactions with the public but can occasionally have work interactions with coworkers and supervisors. He can adapt to occasional changes in a routine work setting.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. Plaintiff subsequently changed age category to closely approaching advanced age.

- Plaintiff has a limited education.

- Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from October 16, 2017, through the date of this decision.

(AR 900-14.)

///

///

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).   "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154.   Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

///

///

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by failing to support her rejection of Drs. Sulier and Leivient and LMFT Millis' opinion that Plaintiff requires supervision. (Pl.'s Motion for Summary Judgment ("Mot.) 22,[5] ECF No. 16.) Plaintiff argues that the record contains the opinion of Dr. Sulier that Plaintiff requires supervision and only contains two other opinions that both opined Plaintiff would require constant supervision and the ALJ's rejection of these opinions is unsupported. Plaintiff asserts that the ALJ guessed what degree of supervision was required rather than fulfilling her duty to clarify the record. Plaintiff argues that the error was not harmless because the record confirms that Plaintiff would be unable to sustain competitive employment if he required reminders up to one third of the workday. (Mot. 26-27.)

Defendant responds that the ALJ considered the opinions of no fewer than seven physicians and a therapist who endorsed wildly varying abilities and limitations and reasonably concluded that Plaintiff was more limited than opined by some providers, but less limited than opined by others. (Def.'s Responsive Brief ("Opp.") 11, ECF No. 20.) Defendant asserts that the ALJs findings were supported by the discussion of the evidence, including his mostly normal mental status examinations, his responsiveness to treatment, the State agency consultants' findings and the medical expert's testimony, and Plaintiff's reported ability to live independently, attend appointments, and perform activities of daily living. (Opp. at 18-19.) Defendant argues that Plaintiff errs in asserting that only Dr. Sulier, Dr. Leivent and Mr. Millis opined regarding supervision as three State agency psychological consultants found that Plaintiff had no limitations in sustaining an ordinary routine without special supervision. (Opp. at 19.)

### A.    Weighing Medical Opinions and Prior Administrative Medical Findings

Under the regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a);

---

[5] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

416.920c(a).  Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017); Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

"When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d). Nonetheless, under the regulatory framework, the Court must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to

1   medical opinions and whether the reasons were free from legal error and supported by substantial

2   evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May

3   14, 2021).

4         1.    LMFT Christopher Millis' opinion

5       The ALJ first considered the opinion of LMFT Millis and found it less persuasive than other

6   opinions in the record.  (AR 909.)

7       Plaintiff argues that the ALJ erred in rejecting the opinion of LMFT Millis because the ALJ

8   pointed to no evidence to support her conclusion that Mr. Millis was basing his opinion on the

9   substance abuse disorder.  (Mot. at 24-25.)  Plaintiff argues that in the opinion itself Plaintiff stated

10  that his family helps him, that the opinion stated his substance abuse was in remission, and the ALJ

11  failed to consider either of these in reaching her conclusion.  (Motion at 25.)

12      Defendant responds that the ALJ appropriately found that Mr. Millis' opinion that Plaintiff

13  would remain chronically disabled was not persuasive as it was an issue reserved for the

14  Commissioner.  Further, Defendant argues that the ALJ properly found that Mr. Millis' opinion that

15  Plaintiff would need constant supervision was unpersuasive because the ALJ observed that the

16  opinion was issued at a time when Plaintiff was using drugs.  Defendant also contends that the ALJ

17  incorporated her discussion of the other medical opinions into her reasons for discounting Mr.

18  Millis' assessment of the need for constant supervision.  Defendant asserts that Plaintiff disagrees

19  and seeks an alternative interpretation of the evidence.  (Opp. at 17.)

20      Defendant asserts that the ALJ appropriately reasoned that Mr. Millis overstated Plaintiff's

21  need for supervision in light of symptoms from his drug use whereas other evidence in the record

22  as a whole did not support such a limitation.  While Plaintiff argues that his drug use was in

23  remission, Defendant contends that the record supports that ALJ's finding that Plaintiff was using

24  drugs, including two positive drug tests in 2019, and Plaintiff admitted to Mr. Millis that he had

25  tested positive for drugs.  (Opp. at 18.)

26      The ALJ considered LMFT Millis' opinion that Plaintiff needs constant supervision and

27  will remain chronically disabled.  (AR 909.)  On October 9, 2019, LMFT Millis completed an

28  annual update.  (AR 552-56.)  The current mental status examination notes Plaintiff's tone was

loud.  His appearance was guarded, and personal hygiene and grooming were positive.  Motor activity was variable depending on mood.  Plaintiff's behavior was friendly and guarded.  Speech exhibited normal rate, rhythm, and tone.  Plaintiff's mood was depressed, and affect was appropriate.   Thought processes were abstract; hallucinations and delusions were present.  Plaintiff's attention span was mildly impaired.  Plaintiff was oriented to person, place, and time.  Memory was impaired.  General fund of knowledge was poor, and estimated IQ was below average.  Insight and judgment were poor.  (AR 553.)  In how problems/symptoms are impairing functioning, Mr. Millis noted, "The client's severe mental health condition (chronic) causes him to need constant supervision and consistent access to Mental Health & AOD/COD services.  The client is unable to work due to the level of his psychopathologies, despite his wanting to work."  (AR 554.)  Mr. Millis stated,

> Based on the annual interview completed today, it appears that the client continues to struggle with managing his Chronic Mental Health diagnosis.  Client's current symptomatology are causing significant/severe dysfunctional impairments in relational/social problems and completing menial tasks (i.e., hygiene).  Consumer was very psychotic/delusional and demonstrated positive/negative symptoms for Schizophrenia which without his caretaker he wouldn't be able to complete a daily routine.  Due to diagnosis and functional impairments consumer continues to meets [sic] criteria for specialty mental health services.  At this time consumer is given a diagnoses [sic] of Schizoaffective (Persecution), Delusional & Polysubstance Disorder (in early remission).  Without treatment consumer is at high risk for exacerbation of symptomatology.
>
> In this writers [sic] clinical opinion, patient continues to need constant supervision and will remain chonically [sic] disabled.

(AR 555.)

The ALJ found that Mr. Millis' opinion was not persuasive.  (AR 909.)  The ALJ found that the opinion that Plaintiff was chronically disabled was an opinion reserved for the Commissioner.  (AR 909.)  Under the regulations, a medical opinion is a statement from an acceptable medical source that reflects judgment about the nature and severity of the claimant's impairments.  20 C.F.R. § 404.1527(a)(1).  Opinions on some issues are not medical opinions but are opinions on issues reserved for the Commissioner.  20 C.F.R. § 404.1527(a)(1).  One such issue is that the claimant is "disabled" or "unable to work."  20 C.F.R. § 404.1527(d)(1).  The ALJ does not give any special significance to opinions on issues that are reserved for the Commissioner.   20 C.F.R. §

404.1527(d)(3).

The ALJ also found that while Mr. Millis is a counselor and was familiar with Plaintiff, he was considering Plaintiff's condition while Plaintiff was still under the influence of substances and records noted that Plaintiff was only sporadically compliant with treatment recommendations, including attending his medical appointments and abstaining from substance use. The ALJ found Mr. Millis' opinion that Plaintiff needed constant supervision to be less persuasive than other opinions. (AR 909.)

Plaintiff argues that the ALJ did not mention any evidence to support the finding that Mr. Millis' opinion was based on the substance abuse disorder.[6] However, the ALJ did not find that Mr. Millis' opinion was based on the substance abuse disorder. Rather, the ALJ found that Mr. Millis was considering Plaintiff's condition while he was still under the influence of substances and was only sporadically compliant with treatment. (AR 909.) The ALJ considered substantial evidence that supports the finding that Plaintiff was continuing to engage in substance abuse and was not compliant with medication and treatment.

For example, at his initial evaluation at the Visalia Adult Clinic on December 26, 2017, Plaintiff admitted that he was addicted to methamphetamine and alcohol and was testing positive. (AR 418.) He was drinking three to four beers a day also using substances. Records from his treating physician indicated he was using substances and not compliant with medication. He would present to sessions under the influence and deny when confronted about his substance use although his presentation indicated otherwise. (AR 419.)

Plaintiff was seen on February 2, 2018, and it is noted that Plaintiff had an ongoing problem

---

[6] Plaintiff argues that the ALJ did not find that his substance abuse was material and therefore has conceded that the underlying mental health impairments are responsible for the limitations assessed. (Mot. at 24.) Defendant states that Plaintiff suggests that the ALJ should not have considered his drug use in discounting Mr. Millis' opinion, but his argument incorrectly conflates the regulation for considering drug addiction and alcoholism with the regulation for evaluating medical evidence. (Opp. at 17.) Defendant argues that the ALJ only considers the materiality of drug abuse and alcoholism after finding a claimant disabled. Since the ALJ did not find Plaintiff disabled when using drugs, she did not need to address materiality. Defendant contends that nothing in the regulations precludes consideration of whether a provider's findings were influenced by Plaintiff's drug use. (Opp. at 18.)

Pursuant to the regulations, "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). Because the ALJ did not find Plaintiff to be disabled, materiality of his drug addiction was not at issue.

1   with substance abuse with alcohol, methamphetamine, and speed which likely explains all of his

2   mental health symptoms.  (AR 444.)  By October 9, 2019, Plaintiff's substance abuse was deemed

3   to be in early remission.  (AR 555.)

4        However, on June 18, 2020, Plaintiff's provider described treatment efficacy remaining

5   only partial due to multiple reasons including possible ongoing methamphetamine use.  (AR 1681.)

6   On March 4, 2021, Plaintiff reported experiencing hallucinations again, but endorsed that he uses

7   marijuana on a daily basis.  (AR 1668.)  As Plaintiff had a schizophrenia diagnosis, his treatment

8   provider noted that Plaintiff's "current symptomatology may very well be substance induced as

9   THC is contraindicated for patients with [an] underlying psychotic disorder."  Plaintiff was advised

10  to abstain from marijuana use in the hope that his psychotic symptoms would diminish.  (AR 1668.)

11       On August 11, 2021, Plaintiff had an appointment, and it was noted he had not been seen

12  for many, many months.  He stated that he was experiencing auditory hallucinations and some

13  paranoia.  The record noted it was unclear how he could not have run out of medication, and the

14  only explanation was that he was medication non-compliant as his medications expired some

15  months ago.  However, Plaintiff stated that he still had some pills left.  (AR 1651.)

16       On February 22, 2022, Plaintiff was seen at the clinic.  His cousin went with him and

17  reported that he was largely medication noncompliant and was using methamphetamine.  She

18  reported he would go a couple weeks being stable and then "completely disappears and goes off the

19  wall."  (AR 1638.)

20       2.   Dr. Sulier's opinion

21       Plaintiff asserts that the ALJ erred by finding that Dr. Sulier's opinion that Plaintiff would

22  likely require supervision or supervisor prompting to maintain pace and persistence persuasive but

23  not incorporating supervision limitations in the RFC.  Plaintiff argues that it was error for the ALJ

24  to find that it was unclear how much supervision Dr. Sulier was recommending since she did not

25  quantify the amount required and found that Plaintiff would not require more supervision that

26  required for average employees performing simple routine tasks.  Plaintiff argues that Dr. Sulier's

27  notes indicate that Plaintiff suffers from impaired concentration and attention and that Plaintiff

28  testified that he was unable to follow instructions and needed reminders for anything more than

1    basic self-grooming.  (Mot. at 23.)

2        Plaintiff also contends that the medical evidence frequently indicated that Plaintiff was

3    disorganized, tangential, has racing delusional thoughts, paranoia, and a severely diminished

4    attention span.  Plaintiff also asserts that he is noted to need help from others, is unable to perform

5    menial tasks, and failed to attend court-ordered classes, and his family sets his schedule for the day,

6    pays his bills, checks on him each day and sets up reminders for his appointments and medications

7    daily.  Plaintiff argues that the ALJ failed to address any of these findings or related outcomes.

8    (Mot. at 23.)

9        Defendant counters that the ALJ found Dr. Sulier's opinion that Plaintiff would likely require

10   supervision or supervisor prompting in order to maintain persistence and pace was unpersuasive

11   because Dr. Sulier assessed mostly moderate mental limitations and since Dr. Sulier did not provide

12   a more restrictive definition of moderate than the agency's definition of moderate, it is presumed

13   that Plaintiff maintained the ability to perform satisfactorily in these areas.  Defendant argues that

14   Dr. Sulier's assessment of moderate limitations meant that Plaintiff could perform satisfactorily,

15   even in areas where Dr. Sulier commenting that Plaintiff would be likely to require supervision or

16   supervisor prompting.  (Opp. at 12.)  Defendant asserts that Dr. Sulier did not identify any additional

17   or special supervision that would be needed besides that required for simple, routine work and the

18   ALJ reasonably found that it was not clear how much supervision Dr. Sulier was recommending

19   since Dr. Sulier did not state that Plaintiff required any supervision beyond the norm.  (Opp. at 12-

20   13.)

21       Defendant further argues that to the extent there was any ambiguity between the moderate

22   limitations opined and Dr. Sulier's opinion regarding supervision, it was resolved by the ALJ

23   finding that Plaintiff would not require additional supervision beyond that required for individuals

24   performing simple, repetitive tasks.  Defendant contends that the ALJ supported her findings with

25   a thorough discussion of the evidence, including mostly normal mental status examinations,

26   Plaintiff's responsiveness to treatment, the State agency psychological consultant findings and

27   medical expert testimony, and Plaintiff's reported ability to live independently, attend

28   appointments, and perform activities of daily living.  (Opp. at 13.)  Defendant argues that Plaintiff

is offering an alternative interpretation of the evidence arguing that he should be found more limited, but the ALJ acknowledged that Plaintiff was found to have some mental status deficits which the ALJ accommodated in the RFC.  (Opp. at 13-14.)  Defendant asserts that Plaintiff selectively highlights a few instances where he presented as disorganized or distracted while ignoring repeated reports throughout the record that Plaintiff was fully oriented and had intact or normal mood, memory, attention, fund of knowledge and thought processing that did not suggest any inability to perform simple, routine work without special or additional supervision.  Defendant argues that Dr. Sulier did not identify any special or additional supervision that would be required beyond that necessary for simple, routine work, and the ALJ's consideration of Dr. Sulier's opinion was reasonable and should be upheld.  (Opp. at 13.)

The ALJ found that the opinion of consultative examiner Dr. Sulier was somewhat persuasive.  (AR 909.)  Dr. Sulier conducted a comprehensive medical examination on December 22, 2021.  (AR 909, 1865-69.)  Dr. Sulier noted that Plaintiff's attire was appropriate, and grooming was good.  Plaintiff presented in a friendly manner and eye contact was good.  Facial expression and gross motor function were normal.  Plaintiff interacted appropriately throughout the interview and no bizarre behavior was observed.  Plaintiff reported first experiencing symptoms since 2018, and they occur on a weekly basis with symptoms in the moderate range.  (AR 1865.)  Plaintiff reported that he was feeling "good", and his symptoms impact his daily living.  He reported thinking there are two of him, he cannot wake up to an alarm, and he cannot count and count a day and cannot remember what the day was.  He reported a history of drug abuse but denied current alcohol abuse or dependency related issues.  Plaintiff was living alone and denied any developmental delays. (AR 1866.)  Plaintiff denied any limitations in daily self-care other than needing reminders to brush his teeth.  He had no significant difficulty with shopping, self-care, or independent living. He was independent in his activities of daily living, prepares meals, and does light household chores.  Plaintiff is able to make change at a store.  (AR 1867.)

Mental examination noted pressured speech.  Plaintiff was alert and fully oriented. Intelligence was fair.  Attention was impaired, Plaintiff could recite 5 digits forward, but could not recite 5 digits in reverse.  Concentration was impaired, Plaintiff could spell world forward, but made

2 errors spelling world in reverse.  Plaintiff was able to complete serial 3's adequately.  Fund of knowledge was limited on current events.  Memory was adequate.  (AR 1867.)  Abstraction and calculations were intact, and proverbs were concrete.  Judgment was impaired and insight was poor.  Mood was euthymic and affect was congruent.  Thought processes were impaired, non-linear and sometimes without logic.  Plaintiff reported auditory and visual hallucinations and reported responding to internal auditory stimuli during the evaluation.  (AR 1868.)

Dr. Sulier diagnosed Plaintiff with bipolar I disorder current or most recent episode manic, with psychotic features; and stimulant use disorder, moderate, in sustained remission.  (AR 1868.)  Dr. Sulier opined that Plaintiff was moderately limited in his ability to understand, remember, and perform simple written and oral instructions; maintaining regular attendance in the workplace; ability to perform work activities on a consistent basis and "will likely require supervision or supervisor prompting in order to maintain pace and persistence"; ability to perform work activities without special or additional supervision and "will likely require supervision or supervisor prompting in order maintain pace and persistence"; ability to complete a normal workday or workweek without interruptions resulting from Plaintiff's psychiatric condition; ability to accept instructions from supervisors; ability o interact with coworkers and with the public; and ability to deal with the usual stresses encountered in a competitive work environment.  (AR 1869.)

The ALJ found that Dr. Sulier's opinion that Plaintiff was moderately to markedly impaired in his ability to understand, remember, and perform complex instructions is supported by his displayed limited fund of knowledge as well as his displayed impaired attention and concentration.  (AR 909, 1867.)  The ALJ also found that Dr. Sulier's opinion that Plaintiff is moderately limited in regard to interacting with coworkers and the public is consistent with his reported hallucinations and delusions, as well as with his use of illegal substances.  (AR 909.)  The ALJ considered Dr. Sulier's opinion that Plaintiff was moderately impaired in understanding, remembering and performing simple written and oral instructions, maintaining regular attendance in the workplace, performing work activities on a consistent basis, performing work activities without special or additional supervision, and completing a normal workday or workweek without interruptions.  As to Plaintiff's need for special supervision, the ALJ noted that Dr. Sulier stated that, "He will likely

require supervision or supervisor prompting in order to maintain pace and persistence." (AR 909, 1869.) The ALJ found that this is not fully persuasive, but it is more persuasive that Mr. Millis' opinion that he needs "constant" supervision. However, the ALJ found it is not clear how much supervision Dr. Sulier was recommending since she did quantify what she was recommending as there is nothing indicating that he would require more supervision than required for average employees performing simple, routine tasks. (AR 909.)

Plaintiff argues that the ALJ failed to discuss medical evidence showing he has disorganized, tangential, racing thoughts, delusions, paranoia and a severely diminished attentions span. (Mot. at 23.) Plaintiff points to the following records in support of this argument.

On December 26, 2017, Plaintiff was evaluated at the Visalia Adult Clinic. (AR 418-27.). Plaintiff admitted that he was addicted to amphetamine and alcohol and was testing positive. His family believed Plaintiff was being taken advantage of by people that were coming over to his house. (AR 418.) Plaintiff was displaying poor activities of daily living, not caring for himself or his home. Plaintiff was self-medicating with three to four beers a day and also using substances. Records from his treating physician indicated that he was using substances and was not compliant with his medication. He was using amphetamine, alcohol and speed and was advised to stop using while taking psychiatric medications. He would present to sessions under the influence but would deny when confronted although his presentation indicated differently. His chief complaint was auditory hallucinations. His family had filed a report because he had spent a large amount of money in several months and they believed his friends were taking advantage of him. (AR 419.) During the session he was fidgety, rambling, and slurring his words. Plaintiff presented with disorganized speech and was unable to focus, reporting he needed a beer. (AR 420.)

Plaintiff was unkempt and avoided eye contact. He was distracted and motor activity was restless and repetitive. He was oriented to place and situation. Short-term and long-term memory were normal, affect was restricted. (AR 421.) Several times during the assessment, Plaintiff asked if he could step outside because he needed a drink. His speech was slurred, and tone was monotonous. Quality of speech was sparse, word salad. Thought process reports loose associations and tangential. Thought content was appropriate to mood. Intellectual functioning was average. It

1  was noted that he may be under the influence of a substance based on his posture and presentation.

2  (AR 422.)

3        Plaintiff was seen again on February 2, 2018, for an initial evaluation.  (AR 444-48.)  The

4  note states that Plaintiff has an ongoing problem with substance abuse with alcohol,

5  methamphetamine, and speed which likely explains all of his mental illness symptoms.  (AR 444.)

6  Plaintiff presented with a normal level of motor activity, bright affect, euthymic mood, and speech

7  normal in rate and volume.  Thought processes were linear, but he tended to perseverate a bit.  He

8  was oriented times four with mild memory and cognitive impairments.  Plaintiff denied auditory or

9  visual hallucinations and there were no overt delusions noted.  Plaintiff was noted to be stable on

10 his medication.  (AR 445.)  Plaintiff's behavior was noted to be friendly and guarded.  Thought

11 processes was logical, linear, and goal directed.  Attention span was mildly impaired.  (AR 447.)

12 Immediate and short-term memory were impaired.  Insight and judgment were mildly impaired.

13 (AR 448.)

14        On March 18, 2018, Plaintiff's medication was refilled.  (AR 864-65.)

15        Plaintiff was seen on January 24, 2019, at the Visalia Adult Clinic for his annual plan.  (AR

16 546-51.)   The record notes that Plaintiff's symptoms impair his ability to maintain positive

17 relationships, maintain employment, and result in recurrent risk of decompensating.  (AR 546.)

18        On April 30, 2019; June 19, 2019; October 9, 2019; June 8, 2020; and September 23, 2020,

19 Plaintiff was seen by a therapist.  Plaintiff's impairments are listed as "Conflicts in Inter/Intra-

20 Personal relationships due to chronic mental illness & limited cognitive functioning; client is no

21 longer caring for his home, describing it as messy and unkept.  Client is also isolating himself, can't

22 hold consistently sustain work and family members need to seek him out to ensure his

23 safety/supervision; and polysubstance abuse [either suspected or inconsistently used]."  (AR 1500,

24 1510, 1532, 1541, 1547.)  On April 30, 2019, Plaintiff reported that he was painting a cousin's barn

25 which would be 4-5 days per week.  He was continuing to attend treatment and reported he was

26 remaining clean and sober.  (AR 1548.)  On June 19, 2019, it is reported that Plaintiff came into the

27 session stating he was "pissed off."  He reported stable activities of daily living and is best when

28 he just lays down.  (AR 1542.)

On August 11, 2021, Plaintiff had an appointment, and it was noted he had not been seen for many, many months.  He stated that he was experiencing auditory hallucinations and some paranoia.  The record noted it was unclear how he could not have run out of medication, and the only explanation was that he was medication non-compliant as his medications expired some months ago.  However, Plaintiff stated that he still had some pills left.  (AR 1651.)  Plaintiff's behavior was noted to be friendly.  Speech was normal in rate, rhythm and tone.  Mood was euthymic and affect was appropriate.  Thought process was logical, linear, and goal directed.  There were auditory and visual hallucinations and paranoia noted.  Thought content was otherwise unremarkable.  Attention span was intact.  Plaintiff was oriented to person, place, time and situation and there were no memory deficits.  Judgment and insight were intact.  (AR 1652.)

Plaintiff was seen on December 15, 2021, after missing three appointments in a row.  (AR 1643.)  He endorsed moderate auditory hallucinations that he did not find too distressing and do not happen all the time.  He was mildly combative and guarded but became more cooperative during the evaluation.  He was offered an increase in his medication to address the hallucinations but declined.  (AR 1643.)  His behavior was reported as friendly.  Speech was normal for rate, rhythm, and tone.  Mood was euthymic and affect was appropriate.  Thought processes were logical, linear and goal directed.  Thought content was unremarkable.  Attention span was intact.  Plaintiff was oriented to person, place, time and situation and there were no memory deficits.  Insight and judgment were intact.  (AR 1644.)

On January 19, 2022, Plaintiff was seen by a therapist.  Impairments note "AOD/COD issues impair his abilities to function, along with limited social interactions (1-2 times a week); Symptoms impair consumer's ability to maintain consistent positive and healthy relationships, which results in recurrent risk of decompensating; Activities of Daily Living are impaired (1-2/week), Hobbies/Interests; some need of supervision at times is noted (i.e., taking medications and attending treatment appointments); the client is unable to work due to the level of psychopathologies; history of Psychiatric Hospitalization.  Some cognitive processing issues either related to organic causation or his mental illnesses.  (AR 1747-48.)  The therapist noted that Plaintiff's activities of daily living were guarded and dependent upon his mood and level of psychosis.  (AR 1749.)

On February 22, 2022, Plaintiff was seen at the clinic.  His cousin went with him and reported that he was largely medication noncompliant and was using methamphetamine.  She reported he would go a couple weeks being stable and then "completely disappears and goes off the wall."   Plaintiff was noted to be disorganized, hostile at times, labile with disorganized thought processes.  He agreed to initiate Ivega Sustenna.  (AR 1638.)  The note indicates that his appearance was likely due to both medication non-adherence as well as substance induced mood/psychosis.  (AR 1638-39.)  Thought processes were noted to be circumstantial, tangential, flight of ideas.  Attention span was severely impaired.  (AR 1639.)

While Plaintiff argues that the ALJ erred by not considering the above records reflecting disorganized, tangential, racing thoughts, delusions, paranoia and severely diminished attention span, many of these records were considered by the ALJ.  For example, the ALJ considered the December 26, 2017 evaluation at the Visalia Adult Clinic.  (AR 905 ("During an initial assessment conducted on December 26, 2017, the claimant reported experiencing mood deficiencies, a racing mind, difficulties staying on task, isolation, poor sleep, hallucinations, and difficulty meeting goals (Ex. 2F/5-6).  Although the claimant was described as rambling, he also displayed a normal short-term and long-term memory, average intellectual functioning, and appropriate thought content (2F/5-9).  He also reported crystal meth and alcohol use (Ex. 2F/12-13).")

The ALJ also considered the February 2, 2018 evaluation.  (AR 908 ("Treatment records from February 2, 2018, describe the claimant as being polite, cooperative, and speaking clearly (Ex. 2F/21; 7F).  The claimant denied any medication side effects at this time and reported that his medications are effective in controlling symptoms (Ex. 2F/22).  He was also described as displaying a linear thought process despite perseverating a bit (Ex. 2F/32).  In addition, he was described as being oriented despite mild memory and cognitive impairments (Ex. 2F/32).  He was deemed to be stable on his medications despite his ongoing substance abuse problems which was described as "likely explain[ing] all of his mental illness [symptoms]" (Ex. 2F/32).")

The ALJ also considered the December 15, 2021 evaluation.  (AR 907 ("During a visit to Visalia Adult Clinic on December 15, 2021, the claimant was described having missed consecutive appointments in a row (Ex. 32F/42).  Other than his reported auditory hallucinations, he displayed

1 fully normal results during his mental status examination (Ex. 32F/43).").

2 Further, review of these records show they substantially support the ALJ's finding that

3 Plaintiff had mostly normal performance during mental status examinations even when not

4 complaint with treatment or using recreational drugs. (AR 912.)

5 The ALJ also found that Plaintiff showed substantial improvement in 2022 after agreeing

6 to initiate Invega Sustenna injection treatment. (AR 907.) The ALJ pointed to substantial evidence

7 in the record to support the finding. (AR 1632 (On May 4, 2022, Plaintiff presented with logical

8 and goal directed thought processes, engaging in a logical back and forth evaluation stating that he

9 is "feeling well, I am taking my injection." Plaintiff denied any ongoing psychotic symptomatology

10 and presented with organized thought processes.), AR 1627-28  (On August 26, 2022, Plaintiff

11 presented reporting he had been getting his injection every month and denied any psychosis in the

12 form of auditory or visual hallucinations or delusions; examination was unremarkable other than

13 mild impairment in insight and judgment), AR 1624-25 (On October 17, 2022, Plaintiff was

14 reported to be much more logical and goal directed as opposed to prior appointments. He reported

15 the injections were working well and he felt calm with no symptoms. Mental health examination

16 was unremarkable.), AR 1621-22 (While Plaintiff is a frequent no show for appointments, he is

17 adherent to his injectable).

18 Plaintiff also argues that he is noted to "need help" from others (AR 546), is unable to

19 perform "menial tasks" (AR 1532, failed to attend court-ordered classes, (AR 1748) and his family

20 members "set out my schedule for the day, pays my bills, checks on me each day and sets up

21 reminders about my appointments and medications daily" (AR 552).   However, the ALJ did

22 consider that Plaintiff needed some help from his relatives to live independently (AR 910, 911-12)

23 and found that Plaintiff's symptom complaints were not entirely credible, and Plaintiff has not

24 challenged that finding.   Additionally, the ALJ is not required to credit a claimant's subjective

25 complaints simply because they are recorded in his physician's records.   Sager v. Colvin, 622 F.

26 App'x 629, 629 (9th Cir. 2015) (citing Batson, 359 F.3d at 1195).

27 The ALJ found Dr. Sulier's opinion somewhat persuasive. (AR 909.)  In regard to the need

28 for special supervision, the ALJ found that Dr. Sulier stated that Plaintiff " 'will likely require

1  supervision or supervisor prompting in order to maintain pace and persistence.'  This is not fully

2  persuasive, but it is more persuasive that Mr. Millis's' opinion that he needs 'constant' supervision.

3  However, it is not clear how much supervision Dr. Sulier is recommending since she did quantify

4  what she was recommending.  There is nothing indicating that he would require more supervision

5  than required for average employees performing simple, routine tasks."  (AR 909.)

6      Dr. Sulier opined that Plaintiff "will likely" required supervision or supervisor prompting

7  to maintain persistence and pace, but the "the ALJ is not required to adopt opinions stated in vague

8  terms that are 'inadequate for determining' Residual Functional Capacity (RFC)."  Bayness v.

9  O'Malley, No. 23-35246, 2024 WL 2931419, at *1 (9th Cir. June 11, 2024) (quoting Ford, 950 F.3d

10  at 1156).  Here, the ALJ reasonably found that Plaintiff would not require more supervision that

11  required for an employee performing simple routine tasks.  (AR 909.)

12      3.   Dr. Leivent's opinion

13      Plaintiff asserts that this error was repeated relative to the opinion of Dr. Leivent and the ALJ

14  failed to support her conclusion that the opinions of Dr. Leivent are not persuasive.  Plaintiff argues

15  that the ALJ only cites a single record which indicates that Plaintiff was friendly and cooperative

16  and fails to consider the entire period of disability and ignores substantial evidence.  (Mot. at 23.)

17      Defendant contends that the ALJ pointed out that Dr. Leivent's own treatment notes were

18  inconsistent with and did not support the debilitating limitations opined.  (Opp. at 14.)  Defendant

19  argues that Plaintiff endorsed visual and auditory hallucinations in March 2021, but also admitted

20  daily use of marijuana which Dr. Leivent thought was causing his symptoms but otherwise

21  Plaintiff's mental status examination was generally normal.  (Opp. at 14-15.)  Defendant asserts

22  that the ALJ noted that Dr. Leivent continued to document mostly normal mental status findings on

23  later visits, aside from an occasional report of auditory hallucinations which were not bothersome

24  or impaired insight or judgment.  Defendant states that while Plaintiff's symptoms worsened in

25  March 2022 after using drugs and failing to take his medication, he agreed to initiate injections and

26  later treatment notes recorded largely normal findings.  (Opp. at 15.)  Defendant argues that the

27  ALJ reasonably found that Dr. Leivent's assessment of disabling limitations were inconsistent with

28  his own records.  Defendant contends that Plaintiff disagrees and seeks a different interpretation of

1   the evidence, but substantial evidence supports the ALJ's determination that Plaintiff maintained

2   the ability to work with the mental limitations in his RFC.  (Opp. at 16.)

3        The ALJ found that the opinions of Dr. Leivent were not persuasive.  (AR 910.)  On March

4   23, 2021, Dr. Leivent completed a schizophrenia spectrum and other psychotic mental disorders

5   professional source data sheet.  (AR 1359-65.)  Dr. Leivent stated that Plaintiff first complained of

6   his symptoms on February 25, 2016, and was last seen on March 18, 2021.  Plaintiff has a history

7   of alcohol and drug abuse.  Plaintiff self-medicates his symptoms with methamphetamine, alcohol,

8   and cannabis.  It was unknown if Plaintiff was currently abusing alcohol or drugs.  (AR 1360.)  Dr.

9   Leivent stated that Plaintiff has delusions and hallucinations that compromise his ability to function

10  as an employee.  He would need constant supervision and his ability to attend is weak as

11  compromised by his self-vegetation and mood.  (AR 1361.)  Plaintiff has extreme limitations in his

12  ability to understand, remember and apply information; interaction with others; concentrate, persist,

13  or maintain pace; and moderate limitations in his ability to adapt or manage himself.  (AR 1361-

14  63.)  Plaintiff is moderately limited in his ability to remember locations and work-like procedures;

15  ability to ask simple questions or request assistance; and markedly limited in all other areas.  (AR

16  1363-64.)

17       On February 15, 2023, Dr. Leivent completed a mental residual functional capacity

18  questionnaire.  (AR 1839-41.)  Dr. Leivent stated that he has been seeing Plaintiff from March 4,

19  2021, to the present.  He is diagnosed with schizoaffective disorder and his prognosis is poor.

20  Plaintiff is taking Invega Hafyera and has reported no side effects.  Plaintiff has no limitations in

21  his ability to ask simple questions or request assistance.  Plaintiff's mental abilities preclude him

22  from carrying out very short simple instructions for 5% of an 8-hour workday.  They preclude

23  Plaintiff from performing the following activities for 10% of an 8-hour workday: understanding

24  and remembering very short and simple instructions; making simple work-related decisions; and

25  accepting instructions and responding appropriately to critics from supervisors.  Plaintiff's mental

26  abilities preclude him from performing all other activity for 15% of an 8-hour workday.  (AR 1839-

27  40.)  Plaintiff would be absent from work 5 or more days a month as a result of his mental

28  impairments and need for ongoing and periodic medical treatment and care.  Plaintiff cannot

manage benefit payments.  He is not a malingerer.  (AR 1841.)

The ALJ agreed that Plaintiff needs a payee to manage his funds because of his substance abuse, the ALJ found that the marked and extreme limitations set forth above are not supported by the doctor's own treatment notes and are not supported by his own opinion that the claimant is only moderately limited in his ability to remember locations and work-like procedures (AR 910, 1328.) Further, the ALJ found that the opinion that Plaintiff would miss five or more days of work is merely speculative.  In addition, the ALJ found that Dr. Leivent's opinion that Plaintiff has extreme limitations in his ability to interact with others is inconsistent with records from the psychological consultative examination, which describe Plaintiff as presenting in a friendly manner, making good eye contact, and interactively cooperatively with the examiner throughout the evaluation.  (AR 910, 1865.)

In the opinion, the ALJ addressed Dr. Leivent's records in discussing Plaintiff's substantial improvement in 2022 after agreeing to initiate Invega Sustenna injection treatment.  (AR 907.)   On May 4, 2022, Plaintiff was seen by Dr. Leivent and presented with logical and goal directed thought processes, engaging in a logical back and forth evaluation stating that he is "feeling well, I am taking my injection."  Plaintiff denied any ongoing psychotic symptomatology and presented with organized thought processes.  (AR 1632.)  Mental health examination was unremarkable.  (AR 1633.)

On August 26, 2022, Plaintiff saw Dr. Leivent and presented reporting he had been getting his injection every month and denied any psychosis in the form of auditory or visual hallucinations or delusions; examination was unremarkable other than mild impairment in insight and judgment.  (AR 1627-28.)

On October 17, 2022, Plaintiff saw Dr. Leivent and was reported to be much more logical and goal directed as opposed to prior appointments.  He reported the injections were working well and he felt calm with no symptoms.  He denied any active psychotic symptomology, denied mood disturbances, and any adverse side effects.  (AR 1624.)   Mental health examination was unremarkable.  (AR 1625.)

The ALJ also considered that the extreme limitations opined in regard to interacting with

1   others was inconsistent with the manner in which Plaintiff interacted with the consultative examiner
2   who noted that Plaintiff presented in a friendly manner, making good eye contact, and interactively
3   cooperatively with the examiner throughout the evaluation.  (AR 910, 1865.)

4          Substantial evidence supports the ALJ's finding that Dr. Levient's opinions are not
5   supported by his treatment records and are inconsistent with the consultative examination findings.

6          Plaintiff argues that only three opinions discussed his need for supervision, however, the
7   ALJ considered other medical opinions and administrative findings in the record that provide
8   substantial evidence to support the RFC findings.

9          4.   Dr. Dilger's opinion

10         The ALJ also considered and found the opinion of Dr. Dilger to be more persuasive because
11  Dr. Dilger reviewed the record and his opinion that Plaintiff was moderately limited in his ability
12  to interact with the public is supported by Plaintiff's ability to establish rapport and his cooperative
13  behavior.  Also, Dr. Dilger's opinion that Plaintiff is moderately limited in his ability to carry out
14  detailed instructions is consistent with records from the psychological consultive examination
15  describing Plaintiff as having impaired attention and concentration despite being able to complete
16  the serial 3's task adequately.  (AR 911.)  On April 16, 2020, Dr. Dilger completed a psychiatric
17  review technique for Plaintiff based on Plaintiff's diagnoses of depressive, bipolar and related
18  disorders and personality and impulse control disorders.  (AR 558-72.)  Dr. Dilger opined that
19  Plaintiff had no limitations in his ability to understand, remember, or apply information; mild
20  limitations in his ability to adapt or manage himself; and moderate limitations in his ability to
21  interact with others and to concentrate, persist or maintain pace.  (AR 570.)  Dr. Dilger also
22  completed a mental residual functional capacity assessment.  (AR 573-76.)  Dr. Dilger opined that
23  Plaintiff was not significantly limited in his ability to understand and memory.  (AR 573.)  Plaintiff
24  was moderately limited in his ability to carry out detailed instructions and to maintain attention and
25  concentration for extended periods but was otherwise not significantly limited in his ability to
26  sustain concentration and persistence.  (AR 573-74.)  Plaintiff was moderately limited in his ability
27  to interact appropriately with the general public and not significantly limited in any other area of
28  social interaction.  Plaintiff was not significantly limited in his ability to adapt.  (AR 574.)  Dr.

1    Dilger found that Plaintiff was limited to performing and persisting at tasks at a lower level that can

2    be learned in up to three months on the job with reduced public contact within his physical

3    limitations.  (AR 576.)

4           5.    Other Agency consultant opinions

5           The ALJ also considered the opinions of Drs. Telfor-Tyler and Murillo finding them

6    somewhat persuasive.  (AR 909.)   The ALJ found that their opinions that Plaintiff had no

7    understanding and memory limitations (AR 87-89, 101, 117, 132) was inconsistent with records

8    showing that Plaintiff had a limited fund of knowledge regarding current events.  (AR 909, 1867.)

9    However, their opinions that Plaintiff could adapt to changes in the work setting was supported by

10   Plaintiff's ability to live independently with some help from relatives.  (AR 101, 118, 909, 1866.)

11          The ALJ found the opinion of Dr. Gross generally persuasive.  (AR 909.)  Dr. Gross opined

12   that Plaintiff could adapt to changes in the work setting which was consistent with his ability to live

13   independently.  (AR 909, 1038, 1063, 1866.)  Further, Dr. Gross' opinion that Plaintiff was able to

14   understand, remember, and carryout simple instructions is supported by Plaintiff's ability to

15   perform simple math, despite some problems with delayed recall.  (AR 909, 1035, 1060, 1867.)

16          The ALJ found that Dr. Telford-Tyler's May 25, 2022 opinion is not persuasive as she

17   concluded that there was insufficient evidence to evaluate the case.  (AR 910, 1088-89, 1106.)

18   However, the ALJ also noted that Dr. Telford-Tyler provided an earlier opinion despite having less

19   evidence at the time that opinion was issued.  (AR 910.)

20          The ALJ considered the testimony of Dr. Cohen at the March 6, 2023 hearing regarding

21   Plaintiff's functional limitations at the hearing.  (AR 911, 937-49.)   The ALJ found that Dr. Cohen

22   gave many examples of Plaintiff's mostly normal performance during mental status examinations

23   even when not complaint with treatment or using recreational drugs as well as when he was not

24   using substances.  (AR 911, 421-422, 505-10, 512-17, 519-24, 525-28, 529-31, 534-36, 1335-37,

25   1483-84, 1602-837.)  The ALJ found her testimony somewhat persuasive. However, the ALJ found

26   that greater limitations are warranted based on the entirety of the record, as set forth in the residual

27   functional capacity, and as discussed above.  (AR 911.)

28   ///

1          **B.      Duty to Develop Record**

2          Plaintiff also contends that the ALJ failed in her duty to develop the record regarding the

3   amount of supervision required.  (Mot. 25.)   Defendant contends that there is no merit to Plaintiff's

4   argument that the ALJ had a duty to further develop the record regarding Plaintiff's need for

5   supervision.  (Opp. at 18.)

6          When applying for disability benefits, the claimant has the duty to prove that he is

7   disabled.  42 U.S.C. § 423(c)(5)(A).  The ALJ has an independent "duty to fully and fairly develop

8   the record and to assure that the claimant's interests are considered."  Widmark v. Barnhart, 454

9   F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).

10  The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ

11  finds that the record is inadequate to allow for proper evaluation of the evidence.  Mayes v.

12  Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

13  Cir. 2001).  Further, the ALJ's duty to fully develop the record is heightened where the claimant

14  may be mentally disabled and, therefore, unable to protect her own interests.  Higbee v. Sullivan,

15  975 F.2d 558, 562 (9th Cir. 1992).  He must be especially diligent in ensuring that favorable as

16  well as unfavorable facts and circumstances are elicited."  Higbee, 975 F.2d at 561 (quoting Cox

17  v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)).

18         Plaintiff argues that the ALJ had a duty to further develop the record because the ALJ found

19  that Dr. Sulier did not quantify how much supervision was required.  However, the ALJ did not

20  find that the record was insufficient to make a finding regarding supervision.  Rather the ALJ found

21  that there was nothing to indicate that Plaintiff would require more supervision than required for

22  average employees performing simple, routine tasks.  While Plaintiff disagrees, it is not this Court's

23  function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's;

24  rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's

25  conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch, 400 F.3d at 679).

26         Here, the ALJ considered eight medical opinions and prior administrative findings.  Three

27  of the eight opined that Plaintiff would need some type of supervision, while the remaining

28  opinions found no supervision was necessary.  The ALJ did not find any one opinion persuasive

but gave varying degrees of persuasiveness to the decisions.   The facts in this case are not similar to other instances in which the ALJ was found to have a duty to further develop the record.  See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more information was needed to make diagnosis); McLeod v. Astrue, 640 F.3d 881, 887 (9th Cir. 2011) (ALJ erred by failing to obtain disability determination from the Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred where failed to determine if claimants benefits were property terminated or should have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis).  The Court finds that the ALJ did not err by failing to further develop the record.

## V.

## CONCLUSION AND ORDER

In conclusion, the Court denies Plaintiff's motion for summary judgment and finds no harmful error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Adam Giacomazzi.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  __July 10, 2024__                    _____

UNITED STATES MAGISTRATE JUDGE